IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RONALD O. CARLTON, )
 )
        Plaintiff, )
 )
    v. ) 1:04CV00684
 )
THE GOODYEAR TIRE & RUBBER )
COMPANY, )
 )
        Defendant. )

## RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

### Facts and Claims

The facts of this case are largely undisputed for purposes of defendant's motion for summary judgment which is now before the Court. In roughly February of 2000, plaintiff bought a set of tires manufactured by defendant Goodyear. (Pl. Dep. p. 96) The tires were bought from, and installed on his 1994 Isuzu Rodeo by, a third-party retailer, "Dad's Tire and Automotive." (Complaint ¶ 3, Def. Brf. Ex. A. p. 6) Plaintiff claims that he visually inspected the tires and measured the treads frequently.[1] (Pl. Brf. p. 2) Otherwise, he did not service the tires himself, but allowed "Dad's" to balance, rotate, and maintain the air pressure in the tires. (Pl. Dep. pp. 96, 109) He never added air to the tires himself and did not discuss the air pressure in the tires with the

---

[1] In plaintiff's brief, he cites to his deposition testimony to support this assertion. However, he has apparently not included any pages from his deposition in the record and the pages cited are not among the pages attached to defendant's briefs. Nevertheless, defendant has not challenged the statement for purposes of the summary judgment motion. Moreover, the outcome is not affected even if plaintiff performed the actions described in his brief.

person who serviced them. (Id. pp. 109, 114) The last time that the tires were rotated was in May of 2001. (Def. Brf. Ex. A p. 6)

On July 7, 2001, plaintiff was driving his Rodeo on a highway outside Greensboro, North Carolina. (Complaint ¶ 4) The tires had been used for about 2,000 miles at that point. (Def. Brf. Ex. A. p. 6) He allegedly testified in his deposition that the road was straight, fairly flat, and dry and that he did not hit any debris. (Pl. Brf. pp. 2-3) See n.1. Plaintiff heard a strange noise that he described as a "rump." (Pl. Dep. p. 148) This caused him to slow down because he thought that it "didn't sound right." (Id. at 147) After plaintiff slowed and drove for another mile to mile and a half, he heard a "boom." (Id.) This second sound was apparently caused by the right front tire of the Rodeo, which blew out and shredded. (Def. Brf. Ex. A. p. 7) Plaintiff was traveling at 70 miles per hour (the posted speed limit) at the time. (Complaint ¶ 4) When the tire blew out, plaintiff was forced to exert a great deal of force to steer and control the Rodeo. He alleges that this caused him to suffer serious and permanent injuries which led to significant medical expenses and forced him to permanently retire. (Id. ¶¶ 4-5)

Plaintiff has not produced any expert or other evidence as to the exact cause of the blowout. Nevertheless, he contends that it must have been the result of some unspecified design or manufacturing defect with the tire. Defendant, on the other hand, has produced expert testimony. Its expert examined the tire after the blowout and reported "[n]o defects in materials, workmanship or

manufacture were found in this tire." (Def. Reply Ex. 4 p. 2) The expert further determined that the tire exploded due to being operated in a "runsoft" condition which weakened the sidewalls through heat buildup. (Id.) Finally, the expert concluded that the runsoft condition was "consistent with impact with an unknown object, which damaged the non-serial upper sidewall . . . leading to loss of inflation pressure." (Id.)

Plaintiff's complaint states that "[t]his is a product liability action and Defendant is liable" because (1) "[t]he tire was improperly designed creating a road hazard for the general public and for Plaintiff in particular," (2) "[t]he subject tire was improperly manufactured creating a road hazard for the general public and for plaintiff in particular," and (3) "[t]he subject tire failed to meet the standard of being suitable and safe for the purpose of which it was designed, manufactured, and sold." (Complaint ¶ 6) The complaint does not expressly use the words breach of an implied warranty of merchantability. However, plaintiff does advance this theory of recovery as well. Defendant has moved for summary judgment as to all of these claims.

## Legal Standard

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the evidence in a light most favorable to the non-moving

-3-

Case 1:04-cv-00684 Document 17 Filed 11/08/05 Page 3 of 17

party.  Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1990).  When opposing a properly supported motion for summary judgment, the party cannot rest on conclusory statements, but must provide specific facts, particularly when that party has the burden of proof on an issue.  Id.  "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, <u>in the form of admissible evidence</u>, that could carry the burden of proof of his claim at trial."  Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added).  A mere scintilla of evidence will not suffice.  Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim.  A few isolated facts are not sufficient.  Sibley v. Lutheran Hosp. of Maryland, Inc., 871 F.2d 479 (4th Cir. 1989).

Because plaintiff's claims arise under North Carolina law, the Court will apply North Carolina's substantive law to plaintiff's claims.  If state law is unclear, the Court must rule in the same manner as it appears the highest state court would rule if presented with the issue.  Where the state's highest court has not decided the particular issue, the Court will examine the rulings of the lower state courts.  Rulings of the lower courts may be considered as persuasive evidence of state law, but they are not binding on the Court should it be convinced the highest court would rule to the contrary.  Sanderson v. Rice, 777 F.2d 902, 903 (4th Cir. 1985), cert. denied, 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336 (1986).  Furthermore, the federal court must rule on state law

-4-

Case 1:04-cv-00684   Document 17   Filed 11/08/05   Page 4 of 17

as it exists, as opposed to surmising or suggesting an expansion of state law. Burris Chemical, Inc. v. USX Corp., 10 F.3d 243 (4th Cir. 1993).

## Discussion

### Negligence Based Product Liability Claims

Under North Carolina product liability law, manufacturers have a duty to use reasonable care to prevent potentially dangerous defects from occurring during the design or making of their products. Red Hill Hosiery Mill, Inc. v. MagneTek, Inc, 138 N.C. App. 70, 75, 530 S.E.2d 321, 326 (2000). Whether an action is based on a design defect or manufacturing defect, a plaintiff bringing a product liability action based on negligence, as opposed to breach of warranty, must prove that "(1) the product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff damage." Id.

Plaintiffs are allowed to use certain inferences in proving these elements. For instance, "a product defect may be inferred from evidence of the product's malfunction, if there is evidence the product had been put to its ordinary use." Id. at 76-77, 530 S.E.2d at 327. Further, where there is direct evidence of an actual defect, an inference of negligence arises. Id. at 75, 530 S.E.2d at 326. Expert testimony is enough to provide direct evidence of a defect. Id. However, it is critical to the outcome of the product liability negligence claims in this case to note that a plaintiff cannot have a fact finder "infer manufacturer

-5-

negligence from a product defect which has been inferred from a product malfunction." Id. at 77 n.7, 530 S.E.2d at 327. In other words, a plaintiff may not prove negligence by stacking inference upon inference. Negligence may not be inferred without actual evidence of a defect.

This last rule brings a swift and sure end to plaintiff's negligence based claims. The parties have spent much of their time debating whether plaintiff is required to present expert witness testimony to establish a design or manufacturing defect and whether or not plaintiff's tire malfunctioned or simply failed. However, his negligence claims can be resolved on a much simpler and more straightforward basis.[2] Plaintiff has produced no direct evidence of defect and is attempting to infer that the tire was defective from his contention that it malfunctioned while being put to ordinary use. By itself, this inference is of little assistance because he could not then use the inferred defect to infer negligence on the part of defendant. He would have to produce actual evidence of a specific act of negligence on the part of defendant from a non-specific, inferred defect -- a likely herculean task.

The record is absolutely devoid of any evidence regarding defendant's designing and manufacturing processes, much less any negligent action or omission that occurred during those processes.

---

[2]The parties' briefing of the questions surrounding the existence of a defect was not wasted. As will be discussed in the next section addressing plaintiff's warranty based claims, plaintiff's ability, or lack thereof, to prove a defect is determinative of those claims.

For this reason, plaintiff has not produced evidence that would allow a jury to find for him on the second element of his negligence based claims. Defendant's motion for summary judgment should be granted as to plaintiff's negligence based product liability claims.

**Implied Warranty of Merchantability Claim**

Before considering the merits of any claim for a breach of the implied warranty of merchantability, the Court must first consider the threshold issue of whether plaintiff has even pled such a claim. Defendant contends that he has not. The basic elements of this type of claim in North Carolina are that (1) defendant gave an implied warranty to plaintiff, (2) the product was defective or otherwise unmerchantable when it left defendant's control, (3) plaintiff was injured due to the defect or other condition, and (4) the plaintiff suffered damages. DeWitt v. Eveready Battery Co., Inc., 355 N.C. 672, 683, 565 S.E.2d 140, 147 (2002)

Defendant does not and cannot claim that plaintiff has not pled that his tire was defective and that the defect caused him to suffer damages. However, it correctly asserts that plaintiff's complaint does not contain the term "warranty" or "merchantability" in any of its allegations. Plaintiff responds by pointing to paragraph 6(c) of his complaint which alleges that "[t]he subject tire failed to meet the standard of being suitable and safe for the purpose of which it was designed, manufactured, and sold." Plaintiff contends that this constitutes an allegation of a breach of the implied warranty of merchantability and that the allegation

of its existence can be implied from an allegation of its breach. He concludes that this is sufficient to satisfy the standards for "notice pleading."

While plaintiff's counsel would be advised to make warranty claims more explicit in the future, the Court does find that he has pled such a claim in this case. It is true that plaintiff does not use the terms "warranty" or "merchantability." Still, the allegation that the tire did not meet the standards of being suitable or safe for the purposes for which it was sold is tantamount to a claim of breach of implied warranty of merchantability. <u>See</u> N.C. Gen. Stat. § 25-2-314. Moreover, the case law cited by the parties shows that product liability claims based on negligence often go hand-in-hand with implied warranty claims, so defendant should not be surprised that plaintiff was pursuing such a claim. Defendant was aware of this possibility of a warranty claim as evidenced by the fact it was included in the summary judgment brief. Nor does defendant cite to any specific prejudice by the lack of clarity in the complaint. For all of these reasons, the Court concludes that plaintiff has pled a claim for breach of the implied warranty of merchantability and it will now address that claim on the merits.

In <u>DeWitt</u>, the North Carolina Supreme Court clarified the rules governing proof of product liability claims. Noting that the proof required for product liability claims was not as stringent as that required for negligence claims, it held that "a plaintiff need not prove a specific defect to carry his or her burden of proof in

a products liability action based upon a breach of implied warranty of merchantability." DeWitt, 355 N.C. 686, 689, 565 S.E.2d 149, 151. The defect element in a warranty claim can be proved by either direct evidence <u>or</u> inferred from circumstantial evidence showing that the product malfunctioned when put to its ordinary use. DeWitt, 355 N.C. App. at 684, 565 S.E.2d at 147. Because plaintiff has not produced direct evidence of a specific defect, he is relying on the inference.[3]

The North Carolina Supreme Court noted that other jurisdictions had employed a number of multi-factor tests for guidance in allowing the use of circumstantial evidence of defect instead of requiring proof of an actual specific defect. In going in this direction, it made clear that such tests developed for strict liability actions must be carefully administered in states such as North Carolina, which have not adopted strict liability for products liability actions. DeWitt, 355 N.C. 688, 565 S.E.2d 150. The evidence must establish a sufficient probability of there being a product defect, not a mere possibility or speculation of a defect. Id.

To aid in determining whether there is enough circumstantial evidence to allow for an inference of a defect in a particular case, North Carolina uses a non-exclusive six "factor" list of

---

[3]Defendant refers to plaintiff's attempts to use this inference as an improper form of <u>res ipsa loquitur</u>. North Carolina does allow the use of this common law inference in negligence actions. See, e.g., N.C.R. Civ. P. 9(j)(3). Plaintiff does not argue <u>res ipsa loquitur</u> for his negligence action. In product liability actions, on the other hand, <u>DeWitt v. Eveready Battery Co., Inc.</u>, 355 N.C. 672, 656 S.E.2d 140 (2002), clearly allows the use of an inference arising out of circumstantial evidence.
-9-

types of circumstantial evidence which a court may consider. These items are: (1) evidence that the product malfunctioned, (2) expert testimony as to possible causes of the malfunction, (3) the amount of time that passed between plaintiff getting the product and the occurrence of the malfunction, (4) similar accidents with the same product, (5) evidence that eliminates other causes of the malfunction or accident, and (6) proof that the malfunction does not happen unless a defect is present. DeWitt, 355 N.C. at 687-688, 565 S.E.2d at 149-150; Evans v. Evans, 153 N.C. App. 54, 60-61, 569 S.E.2d 303, 307 (2002), rev. denied, 356 N.C. 670, 577 S.E.2d 296 (2003). Plaintiff has not argued that any other factors should be considered. Therefore, the Court will limit its inquiry to the areas set out above. The factors will be considered together, with no one area being determinative. Evans at 61, 569 S.E.2d at 308. However, it goes without saying that not all factors are equal and some factors may assume greater importance depending on the particular situation. See Id. Initially, whether on summary judgment or at trial, the Court must decide whether the factors are sufficient as a matter of law to support a finding of breach of warranty. DeWitt, 355 N.C. at 690, 565 S.E.2d at 151.

The first factor on the DeWitt list is whether plaintiff's tire malfunctioned. Defendant states that under North Carolina law there is a difference between product failure and product malfunction, citing Red Hill, 138 N.C. App. at 76 n.6, 530 S.E.2d at 326. The Court disagrees. The Red Hill court was merely pointing out that a malfunction would not support an inference of

a product defect when other possible causes had not been eliminated. Although predating DeWitt, the discussion in Red Hill presages the fact that the first DeWitt factor is merely a threshold test which, if met, allows for the consideration of the other factors. For example, in order to show that the blowout was a product defect malfunction, plaintiff points to evidence of the tire's mileage and service and maintenance record and the lack of any road debris at the time of the failure. These factors are covered in the third, fifth, and sixth factors in the DeWitt list. Therefore, the term malfunction as used in the DeWitt list may be better understood as merely referring to an event that could result from a product defect. For example, in the instant case, a blow out which occurs while driving a vehicle could be the result of a product defect. A blow out caused by driving the tire until it wore out would not. The evidence of the blowout in this case would not alone constitute sufficient circumstantial evidence to infer a product defect, but it allows the Court to continue by considering the other DeWitt factors.

For the second factor, a plaintiff may present expert testimony concerning the variety of possible causes of the malfunction, some of which would include product defects. Plaintiff admits that he has presented no such evidence. Therefore, there is no evidence that this unexplained blow out could have arisen from some specific, much less any, product defect. This will make plaintiff's job much harder.

-11-

The third factor considers whether external factors could be responsible for the malfunction and includes elements such as timing of the malfunction in relation to purchase and age, history, and use of the product. This is a weak point for plaintiff. The evidence is undisputed that the blowout occurred after the tire had been in use for more than sixteen months and had been driven for about 2,000 miles. Plaintiff argues that this amount of usage cuts in his favor because the expected life of the tire was 50,000 miles[4] and it had been used for less than 5% of that distance. Unfortunately for plaintiff, the 50,000 mile figure he gives appears to be the expected distance at which the tire would wear out. No one in the case is arguing that plaintiff's tire blew out because it wore out prematurely and there is no evidence to support a finding that it did. The tire blew out well before it wore out and the only question is whether this premature failure of the tire was due to a design or manufacturing defect or some other cause.

The true significance of the time/mileage evidence to the case is that sixteen months passed and the tire covered the substantial distance of 2000 miles. It did not blow out immediately, which increases the chance of an external factor causing the defect. The service was handled by third parties. No evidence has been presented addressing the position, training, experience, or qualifications of the third parties. Contrary to plaintiff's arguments, the passage of time, distance traveled, and handling of

---

[4] He cites no evidence to support that the tire was expected to last for 50,000 miles, but defendant has also not challenged the assertion.

the tire by third parties all increase the likelihood that a source other than a manufacturing defect could have caused the failure. One North Carolina court found that no inference of a defect could be drawn even though the tire had only been in use for ten days. See Jolley v. General Motors Corp., 55 N.C. App. 383, 285 S.E.2d 301 (1982).[5] Here, the tire had been in use for more than a year. This factor weighs against plaintiff in the overall analysis.

Moving to the fourth DeWitt factor, plaintiff agrees that he has not presented any evidence of similar incidents. His hopes to produce something through cross-examination of defendant's witnesses at trial does not aid him at the present time.

Evidence does come from plaintiff as to the fifth factor which requires eliminating other possible causes of the accident. Defendant points out and plaintiff agrees that there are a number of possible causes for a tire failure besides a defect.[6] These

---

[5] Jolley was decided well before DeWitt. For this reason, that case does not provide the Court with the benefit of the six-factor test described in DeWitt. However, Jolley has not been overruled and is still useful for comparison purposes because the ultimate issue in the case was the same as that in later cases, i.e., whether a defect could be inferred from a failure or malfunction. Jolley also serves to highlight a major difference between DeWitt and the present case. The two cases involved different products. Jolley involved a tire that unexpectedly came off the rim of a car being driven on the open road. DeWitt involved lantern batteries that failed by leaking after a short period of use, that were in the plaintiff's custody only, and that were not exposed to any external forces that could have caused the failure. The tires in Jolley and in this case, and often tires in general, are fundamentally different from the batteries in DeWitt and similar products because of the inherent possibility that external forces (seen or unseen) or the actions of third parties can cause failures over time.

[6] In establishing circumstantial evidence of a product defect, a plaintiff does not have to present evidence eliminating all possible causes of the accident or even those advanced by defendants. Instead, he must eliminate only those, if any, presented during his "case-in-chief." DeWitt v. Eveready Battery Co., Inc.,
(continued...)

include over or under inflation and striking an object in the roadway. (Pl. Dep. pp. 153, 177) Still, he believes that he has offered "ample credible and uncontested evidence that none of the proffered reasons for tire failure existed in this case." (Pl. Brf. p. 14) To support this, he points to what he characterizes as his deposition testimony that "he routinely inspected the tire, that it was professionally serviced on regular intervals, and that it never came into contact with any foreign materials/debris in the roadway." (Id. pp. 14-15)

Unfortunately for plaintiff, this evidence is neither as comprehensive nor as meaningful as he asserts. While he claims to have inspected the tire regularly, this was only for tread wear and any plainly visible problems. Again, air pressure and the striking of an object are the issues in this case, not tread wear. Plaintiff explicitly stated that he did not manage the air pressure himself, but relied on Dad's to maintain the pressure. (Pl. Dep. pp. 96, 109)

A second problem for plaintiff is that he has not pointed to evidence that he inspected, in any way, the tire that blew out before leaving home on the day of the accident. For that matter,

---

[6](...continued)
355 N.C. 672, 694, 565 S.E.2d 140, 153 (2002). In this case, plaintiff admits in his deposition that several possible causes for tire failure exist, some of which are not related to any defect. Therefore, at a minimum, he would need to rebut these other possible causes. Plaintiff need not, at this time, rebut causes established by defendant's expert. The Court will consider that matter if and when it is determined that plaintiff has sufficient evidence to be allowed to present a case of circumstantial evidence of a product defect. At that time, plaintiff's failure to rebut defendant's expert's direct evidence as to the cause of the tire failure may prove fatal to plaintiff's case.

-14-

Case 1:04-cv-00684   Document 17   Filed 11/08/05   Page 14 of 17

he has not even set out when his last visual inspection of the tire occurred. Nor has he offered evidence showing what amount of time passed between the last time anyone visually inspected the tire and the time it blew out. To remedy this, plaintiff points to the "professional" care by Dad's service as proving that nothing but a defect could have caused the blowout. However, as stated earlier, he has not submitted any evidence concerning the practices, qualifications, etc., of whoever performed the service on his tires. Nor has he presented evidence from those persons describing what they did for the tire that blew out, its condition, or whether they regularly added or removed air from it. Also, the last time that he had the tires rotated and balanced was about two months prior to the accident. (Def. Brf. Ex. A. p. 6) There is no evidence that he had them serviced or the air pressures checked and adjusted after this time. Therefore, any testimony from those who serviced his tires would tell little, if anything, about the air pressure in the tire on or near the day it exploded.

Finally, plaintiff contends he did not hit any debris at any time prior to the accident. Unfortunately, the Court is unable to evaluate the exact nature of plaintiff's testimony because he did not include the deposition pages to which he cites as part of the record. Assuming he testified as his brief states, it does not advance his case to any great degree. This is true for two reasons. First, the most plaintiff or anyone else could actually state regarding hitting debris is that they or another driver did not see or were not aware of any debris, nails, sharp objects. etc.

There is no indication from the description of the testimony in the brief that plaintiff did (or could) rule out the possibility that he or his wife hit small debris that he did not see. Also, if his wife drove the vehicle part of the time, he would not actually be able to testify as to whether she might have hit something unless he was always with her and always vigilant. The most he could have said was that he was not aware of her hitting anything.

Second, one portion of plaintiff's testimony actually supports defendant's theory that the tire struck an object, lost air, and then blew out due to underinflation. Plaintiff testified that he heard a single "rump" sound from the right front side of his vehicle about a mile and a half before the right front tire blew out. (Pl. Dep. p. 148) The sound is not described in further detail, but was serious enough to cause the plaintiff to slow his driving speed. (Id. p. 147) This description of events is entirely consistent with his striking an unseen object that was either in the roadway or that fell from his own vehicle, causing a loss of air pressure in the tire, and then a blowout. (It is also the exact scenario described by defendant's unchallenged expert witness as the likely cause of the tire failure.) For all the above reasons, plaintiff has not produced evidence ruling out the possibility that events other than a defective tire caused the blowout.

The sixth and final factor listed in DeWitt is that there is proof tending to establish that such an accident does not occur absent a defect. Plaintiff fails to address this factor, except to

-16-

say it has been discussed elsewhere in his brief and will not be briefed further. This factor goes against plaintiff as well because plaintiff, defendant, and common sense agree that tires blow out for several reasons other than defects, including overinflation, underinflation, and striking objects.

Of the six <u>DeWitt</u> factors, plaintiff only presents evidence supportive of the first one, which is a threshold factor. Consequently, as a matter of law, plaintiff fails to produce sufficient circumstantial evidence to support an inference that the malfunction more than likely resulted from a product defect, as opposed to some other cause. The Court need not consider defendant's unrebutted expert evidence that the blowout did not occur as a result of a product defect, but rather as a result of external factors. Plaintiff's case is really based on nothing more than conjecture and speculation. This is not enough to survive summary judgment. <u>See</u> <u>St. Clair v. General Motors Corp.</u>, 10 F. Supp. 2d 523, 532 (M.D.N.C. 1998). For these reasons, defendant's motion for summary judgment should be granted.

**IT IS THEREFORE RECOMMENDED** that defendant's motion for summary judgment (docket no. 12) be granted and that Judgment be entered dismissing this action.

_____
**United States Magistrate Judge**

November 8, 2005